IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| JANICE POWELL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 617-58 |
| | * | |
| VARIETY WHOLESALERS, INC.; | * | |
| JOHN DOE NO. 1; JOHN DOE NO. 2; | * | |
| JOHN DOE NO. 3; and JOHN DOE NO. | * | |
| 4, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## O R D E R

Before the Court are Defendant Variety Wholesalers, Inc.'s
Motions for Summary Judgment and in Limine. (Doc. 40, 46.) The
Clerk has given Plaintiff notice of the summary judgment motion
and the summary judgment rules, of the right to file affidavits
or other materials in opposition, and the consequences of
default. (Doc. 41.) Therefore, the notice requirements of
Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per
curiam), have been satisfied. The motions have been fully
briefed and are ripe for decision.

## I.  BACKGROUND

On March 18, 2015, Plaintiff Janice Powell and her
granddaughter, Madison Powell, went to Defendant's department

store to shop for clothes. (M. Powell Dep., Doc. 40-3, at 7.) After trying on some clothing, Plaintiff and her granddaughter exited the changing room and walked several steps until Plaintiff slipped and fell on a coat hanger that was lying in the middle of the aisle. (Id. at 15.) Plaintiff was helped to her feet by her granddaughter and, after briefly speaking with one of Defendant's employees about the accident, Plaintiff and her granddaughter left the store. (Id. at 21-23.)

The employee Plaintiff spoke with was Amanda Williams. (Williams Dep., Doc. 58, at 20.) Although Ms. Williams denies witnessing the accident, she does claim that she had inspected the aisle where Plaintiff fell ten minutes before and did not see a coat hanger. (Id. at 37.) Yet during her deposition, Ms. Williams provided inconsistent testimony regarding her whereabouts before the accident. Initially, Ms. Williams said that she had no contact with Plaintiff before the fall. (Id. at 30.) Later in her deposition, however, Ms. Williams stated that she unlocked the changing room door for Plaintiff and her granddaughter right before inspecting the aisle where Plaintiff fell. (Id. at 35-37.) Plaintiff and her granddaughter deny that they had any contact with Ms. Williams before the accident and insist that they let themselves into the changing room. (J. Powell Dep., Doc. 40-2, at 112; M. Powell Dep. at 13, 18.)

On March 16, 2017, Plaintiff initiated this action against Defendant in the State Court of Screven County, Georgia. (Doc. 1-2, at 22.) Plaintiff claims that Defendant was negligent for failing to properly maintain its store and for using clear coat hangers, which allegedly created a tripping hazard. Defendant removed this case on April 26, 2017, and now moves to exclude the testimony of two of Plaintiff's expert witnesses and for summary judgment on Plaintiff's claims.

## II. DEFENDANT'S MOTION IN LIMINE

Defendant moves to exclude the testimony of Thomas Lodge and Melinda Mock, R.N.[1] The proponent of expert testimony bears the burden of demonstrating that the testimony complies with Federal Rule of Evidence 702. U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). The Eleventh Circuit has identified a three-part inquiry, considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be

---

[1] Plaintiff objects to the Court considering Defendant's Daubert motion, which was filed one day after the deadline for filing such motions. (See Docs. 8, 34.) Defendant's counsel filed a motion for leave and explained that his untimeliness was due to the fact that he could not find the password to e-file Defendant's motion. Though counsel's mistake was careless, Plaintiff does not claim that she suffered any prejudice or that Defendant's motion would harm the Court's interest in efficient judicial administration. See Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996) (finding that the "absence of prejudice to the nonmoving party" and "the interest of efficient judicial administration" are to be accorded "primary importance" when determining excusable neglect). Thus, Defendant's motion for leave (doc. 47) is **GRANTED**.

determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." Id. "Thus, for example, while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability." Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).

**A. Thomas Lodge**

Mr. Lodge will testify that using a clear hanger on a light-colored floor causes the hanger to be more inconspicuous and therefore hazardous and that Defendant's inspection policy was unreasonable.

*1. Clear Hangers*

Plaintiff has not met the burden of demonstrating that Mr. Lodge's opinions regarding clear hangers are the product of a reliable methodology. Mr. Lodge's opinion is entirely based on one line from the National Safety Council's (the "NSC") Data Sheet I-495, Falls on Floors, which provides "[c]onsider using colored hangers that contrast with the floor color for easy identification." (See Lodge Report, Doc. 13, at 5.) Yet Mr.

4

Lodge provides no information about the NSC nor does he state whether the NSC's guideline has been adopted by Defendant's industry. Mr. Lodge also fails to explain the methods or data the NSC used when it recommended using colored hangers. Without such information, the Court cannot verify that Mr. Lodge's testimony is reliable. See Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) ("In assessing reliability, the court must focus 'solely on principles and methodology, not on the conclusions that they generate.'" (quoting Daubert, 509 U.S. at 591)).

Failing to describe the methods utilized by the NSC also undermines the helpfulness of Mr. Lodge's opinions. Without knowing why the NSC recommends using colored hangers, it is impossible to determine whether Mr. Lodge's testimony is anything more than a common-sense conclusion that the jury is equally qualified to make. See U.S. v. Christian, 673 F.3d 702, 710 (7th Cir. 2012) (excluding expert opinions where they can be derived from common sense).

Even if Mr. Lodge had included information about the NSC and its methods, the language of Data Sheet I-495 does not create a duty that could support a premises liability claim. The guideline tells its audience to "*consider* using colored hangers that contrast with the floor color for easy identification." (See Lodge Report at 5 (emphasis added).) Such

5

precatory language does not impose a duty on Defendant to color coordinate its hangers and floors. See Petre v. Norfolk Southern Ry. Co., 458 F. Supp. 2d 518, 533 (N.D. Ohio 2006) (finding that the precatory language of a company's policy did not give rise to a duty to follow that policy).

### 2. *Defendant's Safety Policy*

Mr. Lodge's opinions regarding Defendant's safety policy are also inadmissible. In his expert witness report, Mr. Lodge relates that Defendant's inspection policy required its employees to inspect the store every two hours. (Lodge Report at 9 ("The store must be inspected at 9 AM, 11 AM, 1 PM, 3 PM, 5 PM, 7 PM, and at closing.").) Mr. Lodge concludes that "[h]ad [Defendant's employees] performed [their] routine inspection at 3:00 [p.m.], the hanger on the floor should have been identified by the employee performing inspections and been removed as a slipping hazard." (Id.) This conclusion is based on the assumption that the hanger Plaintiff tripped over was on the floor of the aisle at 3:00 p.m. When Defendant's counsel asked Mr. Lodge about this assumption, he admitted that it was pure speculation. (Lodge Dep., Doc. 46-7, at 83, 85-86.) Rule 702 requires expert opinions to be supported by more than subjective belief or unsupported assumptions. Daubert, 509 U.S. at 590. Thus, because Mr. Lodge has no reason to believe the hanger was

on the floor at 3:00 p.m., his conclusion that Defendant did not conduct an inspection or that the inspection conducted was unreasonable is unfounded.

Because Mr. Lodge's opinions regarding the use of clear hangers and Defendant's safety policy are unhelpful and based on unreliable methods, Plaintiff will not be allowed to rely on Mr. Lodge's testimony at trial. Accordingly, Defendant's motion to exclude Mr. Lodge's testimony is **GRANTED**.

## B. Melinda Mock

Defendant also moves to exclude the testimony of Ms. Mock. Ms. Mock will testify about the reasonable and customary fee charged for the medical procedures that Plaintiff needed because of her injury. Defendant claims that because Ms. Mock is not qualified to identify which medical procedures were necessitated by Plaintiff's accident and which were the result of a pre-existing injury, her testimony is inadmissible.

Ms. Mock has thirty-five years of experience in medical billing. (Mock Report, Doc. 14, at 2.) While she is not competent to testify about causation, Ms. Mock is qualified to discuss the reasonable and customary fee charged by Plaintiff's providers. Accordingly, so long as another qualified expert has attributed a certain procedure to Plaintiff's fall, Ms. Mock can testify about the amount charged for that procedure. See FED. R.

EVID. 104(b) (allowing courts to admit evidence the relevance of which will be decided later).

Nevertheless, given that Plaintiff's providers will presumably reveal the amount they charged for their services, Ms. Mock's testimony could be duplicative. See Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315-16 (11th Cir. 2005) (finding that court did not abuse its discretion when it excluded the testimony of a second expert, where the first expert testified on the same topics). Accordingly, unless the amount charged by Plaintiff's providers is challenged by Defendant, Ms. Mock's testimony will be inadmissible. Because the Court cannot presently determine whether Defendant intends to make this challenge, excluding Ms. Mock's testimony would be premature. Accordingly, Defendant's motion is **DENIED** without prejudice.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A motion for summary judgment will be granted if there is no disputed material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Facts are material if they could affect the results of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view facts in the light most favorable to the non-moving party and draw all inferences in its favor. Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant initially bears the burden of proof and must demonstrate the absence of a disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must also show no reasonable jury could find for the non-moving party on any of the essential elements. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

If the movant carries its burden, the non-moving party must come forward with significant, probative evidence showing there is a material fact in dispute. Id. at 1116. The non-movant must respond with affidavits or other forms of evidence provided by Federal Rule of Civil Procedure 56. Id. at 1116 n.3. The non-movant cannot survive summary judgment by relying on its pleadings or conclusory statements. Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). After the non-movant has met this burden, summary judgment is granted only if "the combined body of evidence is still such that the movant would be entitled to a directed verdict at trial – that is, such that no reasonable jury could find for the non-movant." Fitzpatrick, 2 F.3d at 1116.

## B. Premises Liability

Plaintiff claims that Defendant breached its duty to keep its premises safe by using clear hangers and failing to adopt a reasonable inspection policy.

### 1. *Defendant's Liability for Using Clear Hangers*

Under Georgia law, a landowner who invites people onto its property owes a duty of ordinary care to keep those premises safe. O.C.G.A. § 51-3-1; Begin v. Ga. Championship Wrestling, Inc., 322 S.E.2d 737, 739 (Ga. Ct. App. 1984) ("An occupier of premises is under a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises."). To prevail on a premises liability claim, a plaintiff must first show that the premises are indeed hazardous. Cohen v. Target Corp., 567 S.E.2d 733, 735 (Ga. Ct. App. 2002) (rejecting a claim where the plaintiff "proffered no expert affidavit about the construction or maintenance of the incline or any evidence that defendants violated any rules, ordinances, or standards pertaining to the structure."). Furthermore, "[m]erely stating that a condition is dangerous does not constitute evidence that it is so." Ford v. Bank of Am. Corp., 627 S.E.2d 376, 378 (Ga. Ct. App. 2006). Here, the

only evidence Plaintiff offers to show that clear hangers are hazardous is Mr. Lodge's testimony. Given that the Court has decided that his testimony is inadmissible, Plaintiff has failed to establish that clear hangers are dangerous.

  2.  *Defendant's Failure to Maintain its Store in a Reasonably Safe Condition*[2]

Plaintiff also claims that Defendant is liable for failing to remove the hanger that caused Plaintiff's fall. In a "trip and fall" case, the plaintiff must present evidence that: (1) the owner had actual or constructive knowledge of the hazard, and (2) the plaintiff lacked such knowledge, despite exercising reasonable care. McLemore v. Genuine Parts Co., 722 S.E.2d 366, 368 (Ga. Ct. App. 2012) (quoting Prikle v. Robinson Crossing, LLC, 612 S.E.2d 83, 84 (Ga. Ct. App. 2005)). A plaintiff is only required to satisfy the second element when the defendant has come forward with evidence of the plaintiff's negligence. Id. at 368. Because Defendant has not come forward with such evidence, only the first element is in dispute.

Plaintiff claims that Defendant had constructive knowledge of the hanger that caused Plaintiff's fall. Under Georgia law, constructive knowledge can be proven by demonstrating that the owner lacked a reasonable inspection policy. Landrum v. Enmark Stations, Inc., 712 S.E.2d 585, 588 (Ga. Ct. App. 2011). In

---

[2] Defendant concedes that the presence of a hanger in the middle of an aisle is a hazardous condition. (Doc. 46, at 14.)

11

order for an owner to prevail on summary judgment based on lack of constructive knowledge, the burden is on the owner to "demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." Shepard v. Winn Dixie Stores, 527 S.E.2d 36, 39 (Ga. Ct. App. 1999).

Defendant first argues that Plaintiff cannot prove constructive knowledge because Amanda Williams, Defendant's employee, inspected the aisle where Plaintiff fell ten minutes before her fall. When "a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, [Georgia courts] have held that the inspection procedure [is] adequate as a matter of law."[3] Medders v. Kroger, 572 S.E.2d 386, 388 (Ga. Ct. App. 2002). Here, Ms. Williams, testified that she inspected the aisle where Plaintiff fell after unlocking the dressing room door for Plaintiff and her granddaughter. (Williams Dep. at 35-36.) Yet Ms. Williams testified earlier in her deposition that she had no contact with Plaintiff before the fall, which was corroborated by Plaintiff and her granddaughter. (Williams Dep. at 30; J. Powell Dep. at 112; M. Powell Dep. at 13.) Ms. Williams' inconsistent

---

[3] A "brief period" can mean anything up to fifteen minutes before the accident. See Roberson v. Winn-Dixie Atlanta, 544 S.E.2d 494, 495-96 (Ga. Ct. App. 2001) (store was not liable when evidence showed that an employee inspected the floor and saw no obstruction fifteen minutes prior to the customer's fall); Bolton v. Wal-Mart Stores, Inc., 570 S.E.2d 644, 645 (Ga. Ct. App. 2002) (ten to fifteen minutes).

testimony about her whereabouts creates a question of fact regarding whether she conducted an inspection shortly before Plaintiff's fall. Thus, Defendant cannot rely on Ms. Williams' inspection to demonstrate that its maintenance policy is adequate as a matter of law. Cf. Markham v. Schuster's Enters., Inc., 601 S.E.2d 712, 714 (Ga. Ct. App. 2004) (finding that summary judgment was appropriate when the manager gave "uncontradicted testimony" that he inspected area shortly before the plaintiff's fall).

Even without Ms. Williams' inspection, Defendant insists that its inspection policy is adequate as a matter of law. Defendant points out that its employees were directed to "[c]ollect unused hangers that have fallen on the floors" and to perform "safety sweeps." (Doc. 69-1; Williams Aff., Doc. 40-4, ¶ 3.) Nevertheless, whether an inspection policy is reasonable is often a question that cannot be answered through summary judgment. See, e.g., Johnson v. All Am. Quality Foods, Inc., 798 S.E.2d 274, 277 (Ga. Ct. App. 2017) (reversing summary judgment despite evidence of an inspection procedure that was conducted on the day of the accident); Shepard, 527 S.E.2d at 39 ("The length of time the substance must remain on the floor before the owner should have discovered it and what constitutes a reasonable inspection procedure vary with each case, depending on the nature of the business, the size of the store, the number

13

of customers, the nature of the dangerous condition, and the store's location."). Moreover, as previously mentioned, whether Defendant's employees followed the inspection policy at the time of Plaintiff's injury is a disputed question of fact. Because a jury could find that Defendant's inspection policy is inadequate or was not carried out at the time of the accident, Plaintiff has presented evidence of Defendant's constructive knowledge.

## B. Negligent Hiring

Plaintiff also alleges that Defendant is liable for failing to properly train its employees to keep its floors free from debris. Under Georgia law, however, "subjecting a defendant to vicarious liability through *respondeat superior* precludes a redundant claim of negligent hiring or retention against the same defendant." Bramlett v. Bajric, 2012 WL 4951213, at *5 (N.D. Ga. Oct. 17, 2012) (citing Bartja v. Nat'l Union Fire Ins. Co. of Pittsburgh, 463 S.E.2d 358, 360-61 (Ga. Ct. App. 1996)). "In cases alleging both respondeat superior and negligent entrustment against an employer for the acts of its driver where no punitive damages are sought, [the Georgia Court of Appeals has] stated that a defendant employer's admission of liability under respondeat superior establishes the liability link from the negligence of the driver . . . rendering proof of negligent entrustment unnecessary and irrelevant." Bartja, 463 S.E.2d at

361. "This rule arises from the countervailing problems inherent in protecting the employee from prejudicial evidence of his prior driving record and general character for recklessness in driving while admitting the proof necessary for the negligent entrustment case to proceed." Id. In the instant case, Defendant concedes that it will be held liable if Ms. Williams is found to be negligent. (Doc. 68 at 15.) Given that Plaintiff does not seek punitive damages, her negligent hiring, supervision, training, and entrustment claims would be redundant and are therefore precluded as a matter of law.

## IV. CONCLUSION

Plaintiff has not demonstrated that the use of clear hangers is inherently dangerous. Nevertheless, because the Court cannot find that Ms. Williams inspected the aisle where Plaintiff fell shortly before her fall, there is evidence in the record that Defendant had constructive knowledge of the hanger that caused Plaintiff's fall.[4] Accordingly, Defendant's Motion for Summary Judgment (doc. 40) is **GRANTED IN PART AND DENIED IN**

---

[4] To the extent that Defendant's motion for summary judgment relies on Plaintiff's failure to cite evidence in her response to Defendant's Statement of Material Facts Not in Dispute (doc. 40-5), Defendant's motion is **DENIED**. While Local Rule 56.1 requires the movant to file a separate statement of material facts, the respondent is only required to file a statement that controverts those facts. See S.D. GA. L.R. 56.1. Plaintiff has satisfied this burden by citing evidence in her brief in opposition to Defendant's motion for summary judgment. (See Doc. 62; see also Bank of the Ozarks v. Kingsland Hospitality, LLC, 2012 WL 5928642, at **4-5 (S.D. Ga. Oct. 5, 2012) (finding that a responsive brief satisfied the respondent's requirements under Local Rule 56.1).)

15

**PART.** Further, as explained above, Defendant's Motion in Limine (doc. 46) is **GRANTED IN PART AND DENIED IN PART.** This case will proceed to trial on Plaintiff's negligent inspection claim in due course.

**ORDER ENTERED** at Augusta, Georgia this ____ day of July, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA